UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
STEPHEN MONETTE, JR.            )
       Plaintiff                )
                                )
v.                              )   CIVIL ACTION NO:
                                )
STAT AMBULANCE SERVICE, INC,    )
d/b/a STAT/SOUTHCOAST EMERGENCY )
MANAGEMENT SYSTEMS              )
       Defendant                )
                                )
```

# COMPLAINT

Plaintiff, Stephen Monette, Jr., by and through his counsel, alleges as follows:

## Parties

1. Plaintiff Stephen Monette, Jr., is an adult resident of Acushnet, Massachusetts.

2. Defendant Stat Ambulance Service, Inc., d/b/a Stat/SouthCoast Emergency Management Systems, is a Massachusetts profit corporation with a principal office at 360 Faunce Corner Rd., North Dartmouth, MA 02747.

3. Defendant Stat/SouthCoast was an employer of the Plaintiff for purposes of the Emergency Paid Sick Leave Act ("EPSLA") and the Massachusetts Wage Act. See Pub. L. No. 116-127, §110, 134 Stat. 178, 189 (2020) & 29 C.F.R. §826.40; G.L. c. 149, §148C(a).

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S. C. §1331.

5. Defendant has violated the Emergency Paid Sick Leave Act ("EPSLA") by terminating the Plaintiff's employment in retaliation for his taking paid sick leave provided by EPSLA.

6. This Court has personal jurisdiction over the Defendant Stat/SouthCoast because it operates as a domestic profit corporation organized under the laws of the Commonwealth; it employed Plaintiff to work within the Commonwealth; and because the acts and omissions giving rise to this Complaint occurred in the Commonwealth.

7. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §1391(b) as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**Factual Allegations**

8. On or about December 4, 2019, Plaintiff Stephen Monette began working for Defendant Stat/South Coast as a paramedic.

9. The Defendant Stat/SouthCoast is in the business of providing ambulance and medical transportation services to towns and medical facilities.

10. On information and belief, the Defendant Stat/SouthCoast employs fewer than 500 employees.

11. Stat/SouthCoast did not have a formal evaluation process for its employees, but Mr. Monette received positive feedback regarding his work.

12. During his employment with the Defendant, Mr. Monette was not notified of any negative feedback regarding his work.

13. In September 2020, Mr. Monette was promoted from a provisional employee to a permanent employee.

14. Mr. Monette worked on average 39 hours per week and was paid $24.64 per hour.

15. On or about December 3, 2020, Mr. Monette noticed that he was experiencing a stuffy nose.

16. Out of an abundance of caution, Mr. Monette decided to have a COVID test to rule that out as a possible cause, and he managed to obtain one that day.

17. Mr. Monette's December 3 COVID test was not obtained through work, but instead Mr. Monette scheduled and paid for the test himself.

18. On December 4, 2020, Mr. Monette arrived at work for his regularly scheduled shift, during which he wore a mask as required by company policy.

19. The Defendant required that before each shift employees answer questions on an online symptom screening and attestation form.

20. As of December 4, 2020, the symptoms included in the online form included symptoms such as fever, coughing, and body aches.

21. As of December 4, 2020, the Defendant's online symptom checker form did not include "stuffy nose," "nasal congestion," or any other similar nasal symptoms as options.

22. On December 4, 2020, Mr. Monette was not experiencing any symptoms that appeared on the online symptom attestation form, and he completed the form fully, accurately, and honestly, reporting that he was not experiencing any of the listed symptoms.

23. As of December 4, 2020, Mr. Monette had not been informed of any policy requiring or requesting employees to notify Stat/SouthCoast of the existence of pending COVID tests.

24. As of December 4, 2020, Defendant Stat/SouthCoast had no written policy requiring or requesting employees to notify them of the existence of any pending COVID tests.

25. Early in the morning of December 5, 2020, Mr. Monette was notified that his COVID test results were positive.

26. Mr. Monette was directed by his health care provider to quarantine.

27. Mr. Monette promptly notified his supervisor, Ryan Cabral, of the positive result and his need to quarantine.

28. Mr. Monette was immediately placed on sick leave to accommodate a quarantine period and he did not work his scheduled shifts on that day, or for the next two weeks.

29. On December 10, 2020, while Mr. Monette was still on leave, Mr. Cabral and Mr. Monette spoke on the telephone.

30. During that conversation, Mr. Cabral notified Mr. Monette that he had decided to terminate Mr. Monette's employment with Stat/SouthCoast.

31. Mr. Cabral informed Mr. Monette that the reason for the termination of his employment was that Mr. Monette had failed to notify his employer of his pending COVID test on December 4.

32. During the course of the same December 10 conversation Mr. Cabral acknowledged that Stat/SouthCoast had no policy that would have required or even requested Mr. Monette to report the existence of the pending COVID test.

33. During the course of the December 10 conversation, Mr. Cabral also acknowledged that Mr. Monette had fully complied with the company's then-existing policy regarding online symptom reporting.

34. Mr. Cabral also acknowledged in the December 10 conversation that Mr. Monette had most likely contracted COVID through his work for Stat/SouthCoast.

35. The Massachusetts Attorney General's Office issued Plaintiff an Authorization for Private Suite for his claims on March 17, 2021.  See Exhibit A.

## COUNT ONE
## Violation of Emergency Paid Sick Leave Act (EPSLA)

36. Plaintiff re-alleges and re-asserts the allegations in the above paragraphs as if fully set forth herein.

37. As a private employer with fewer than 500 employees, the Defendant is an employer within the meaning of EPSLA.

38. Under EPSLA, an employer is prohibited from discharging, disciplining, or discriminating against an employee for taking paid sick leave provided under EPSLA.  29 C.F.R. §826.150(a); Families First Coronavirus Response Act (FFCRA), Pub. L. No. 116-127, §5104, 134 Stat. 178, 196-97 (2020).

39. An employer who discharges, disciplines, or discriminates against an employee in violation of this provision of EPSLA is considered to have violated section 15(a)(3) of the FLSA, 29 U.S.C. §215(a)(3), and shall be subject to the enforcement provisions set forth in section 16 and 17 of the FLSA, 29 U.S.C. 216, 217.  29 C.F.R. §826.150(b)(2); FFCRA Pub. L. No. 116-127, §5105, 134 Stat. 178, 197 (2020).

40. Defendant's stated reason for terminating Mr. Monette's employment—for failing to disclose a pending COVID test—was self-evidently pretextual.  The Defendant had no written policy to require or request employees to disclose COVID tests, nor had the Defendant ever informed Mr. Monette that he should do so.  It can therefore be inferred that the true reason for Mr. Monette's termination was in retaliation for his use of federally protected sick leave, the of which immediately proceeded his termination.  *See Kofler v. Sayde Steeves Cleaning Service, Inc.*, 2020 WL 5016902, No. 8:20-cv-1460-T-

33AEP (M.D. Fla. Aug. 25, 2020) (holding temporal proximity between request for leave and termination of employment sufficient to state a claim for termination under FFCRA).

41. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm.

## COUNT TWO
### Violation of Massachusetts Wage Act

42. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

43. Under the Massachusetts Wage Act, M.G.L. c. 149, §148C, it is unlawful for an employer to interfere with an employee's use of sick time, "including, but not limited to, by using the taking of earned sick time under this section as a negative factor in any employment action."  G.L c. 149, §148C(7)(h).

44. Defendant's stated reason for terminating Mr. Monette's employment—for failing to disclose a pending COVID test—was self-evidently pretextual.  The Defendant had no written policy to require employees to disclose COVID tests, nor had the Defendant ever informed Mr. Monette that he should do so.  It can therefore be inferred that the true reason for Mr. Monette's termination was in retaliation for his use of sick time, the occurrence which immediately proceeded his termination.

45. By terminating Mr. Monette's employment because of his use of sick time, the Defendant has violated the Massachusetts Wage Act.

46. An employee aggrieved by a violation of M.G.L. c. 149, §148C may bring a civil action for lost wages, as well as treble damages as liquidated damages, under M.G.L. c. 149, §150.

47. As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer harm in the form of lost wages.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff requests:

1. Damages in an amount to be determined at trial including damages for lost pay, liquidated damages, and other monetary losses;

2. Costs and attorneys' fees; and

3. Such other legal or equitable relief as the Commission may award.

## DEMAND FOR JURY TRIAL

4. Plaintiff demands a trial by jury on all issues so triable.

                Respectfully submitted,

                Stephen Monette, Jr.

                By counsel:

                _____

                Emily Smith Lee (BBO# 634223)
                esmithlee@slnlaw.com
                Rebecca N. Rogers, Esq. (BBO#671111)
                rrogers@slnlaw.com
                SLNLaw LLC
                46 South Main Street
                Sharon, MA  02067
                781-784-2322

Dated: March 25, 2021